**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**HEIDI A. STOTTLER,**

        **Plaintiff,**

**v.**                                    **Case No.  8:09-cv-1719-T-TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income payments.  For the reasons set out herein, the decision is affirmed.

**I.**

Plaintiff was forty-eight years of age at the time of her administrative hearing in November 2008.  She stands 5 feet, 6 inches tall and weighed 140 pounds according to her administrative filings.  Plaintiff has a high school education.  Her limited past work consisted of motel housekeeping.  Plaintiff applied for Supplemental Security Income payments in November 2005, alleging disability as of October 1, 1995, by reason of bi-polar disorder, post-traumatic stress disorder, manic depression, and asthma.[1]  The Plaintiff's application was denied originally and on reconsideration.

_____

[1]Plaintiff had also applied for Social Security disability benefits (R. 62), but did not have the quarters of coverage to qualify for such benefits (R. 60-61).

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ").  The Plaintiff was represented at the hearing by counsel and testified in her own behalf.  Additionally, a vocational expert was called by the ALJ.  In essence, Plaintiff testified that she is unable to work because she suffers from post-traumatic stress disorder, bi-polar disorder, sleep apnea, heart problems, asthma problems, and a wrist fracture to her dominant right hand.  She estimates she can only lift five pounds.  Her severe asthma requires the use of a breathing machine four times per day for a duration of twenty minutes each time.  Dust, pollen, and chemicals bother her.  She also has neck and back problems resulting from a bicycle accident.  She treats at the Veterans Administration Hospital (VA), at least one time per month, and she goes twice a month for medications.

On an average day Plaintiff wakes up, her fiancé will make her breakfast, and then she may go outside with her plants.  She usually naps in the afternoons.  She has difficulty being around people socially.  The medications she takes cause her dizziness which at times cause problems for her walking.  She takes eight different medications.  Other side effects include nausea, difficulty concentrating, mood swings, sleep problems, and constipation.  She goes to sleep around 9:00p.m., but does not sleep through the night.  She wakes up because of nightmares and her sleep apnea.

Plaintiff admitted to a history of illicit drug use ten years previous.  She drinks alcohol socially on the weekends if friends come over or if she is watching a football game. She leaves her condominium once a week to go to the grocery store and to go to her doctor's appointments.  She will take a bus there because she does not have a driver's license.

2

Plaintiff was in the Marine Corps from 1977 to 1979.  She joined the military when she was 18 years old to get away from her grandfather who was molesting her.  While she was away in the service, her father shot her mother and then killed himself.  Her experience in the military was not good.  She was a truck driver and was the only female there.  She was harassed by the men.  Her best friend was raped while in the Marine Corps and then committed suicide.  After getting out of the Marine Corps, the father of her sixth child drowned.  She had to raise the children by herself and they lived in public housing.  In the 1980's and 1990's, she used illicit drugs.  At first she paid for the drugs from her inheritance of a half a million dollars from her grandfather.  After she went through all the money, she shoplifted and prostituted herself to pay for drugs until she was sent to prison.  Since then, she has been involved in some voluntary drug treatment programs.  The longest she has stayed off drugs and alcohol since 1999 was a year.

As for past employment, Plaintiff worked in 1999 doing housekeeping for a motel. She could not do that type of job now.  Because of her severe asthma, she cannot be around dust and chemicals.  Also, she would be unable to take her breathing treatments four times per day.  Additionally, the heat and heavy lifting would be too much for her.

Plaintiff testified she was to have heart surgery in a month.  Her heart races, at times over 200, and she has a blocked artery in her left chamber.  She has been in the hospital seven times in the past year because of it.  Plaintiff has seen psychiatrists and psychologists in the past at the VA, but not recently.  She is on a psychotropic drug which, by her account, seems to be working.  Plaintiff has been diagnosed with PTSD as well as bi-polar disorder.  She is

3

"more down" than up.  She has poor energy, significant memory and concentration deficits, and a poor appetite.  She voluntarily gave up custody of her children to family members, but she can still see them when she wants.  (R. 696-712).

Next, the ALJ called Jeffrey Carlisle, a vocational expert ("VE"), to testify.  The VE initially classified Plaintiff's prior work of housekeeping to be light level, unskilled, with an SVP of 2.  Next, he testified upon a hypothetical of an individual of Plaintiff's education, age, and work experience, performing medium exertional work, with no concentrated humidity, heat, cold, dust, fumes or gasses, and limited to performing simple repetitive work with no detailed or complex tasks and only occasional interaction with the public.  Based on this hypothetical, the VE classified the jobs with this criteria as being medium exertional, unskilled, with a SVP of 1 or 2, and identified positions available in the national and local economy of assembler, packager, and general machine operator.  For the second hypothetical, the VE was to assume a light exertional position with no work around dangerous moving machinery, no work at unprotected heights, no concentrated exposure to chemicals, humidity, heat, cold, dust, fumes, gasses, and limited to unskilled employment with no detailed or complex work and only occasional interaction with the public.  On this hypothetical, the VE opined there would be jobs available in the national and local economy including as an assembler, a packager, and machine operator.  With the added limitation of being a sedentary position, the VE testified there would still be positions of assembler, packager, and machine operator, although the number of such positions available would be reduced.  If the hypothetical individual had breathing problems and cardiac arrhythmia such that she would

4

need to rest at will and take naps during the course of the day, the VE testified that such limitations would eliminate competitive employment. (R. 712-16).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By her decision of March 13, 2009, the ALJ determined that while Plaintiff has severe impairments related to substance abuse (heroin, cocaine, and alcohol) in alleged remission; personality disorder not otherwise specified; mood disorder; post-traumatic stress disorder; asthma; cervical osteophytes; history of right wrist fracture in October 2005; and cardiac arrhythmia, she nonetheless had the residual functional capacity to perform a restricted range of light exertional work.[2]  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 10-19).  The Appeals Council considered additional evidence and denied Plaintiff's request for review.

---

[2]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities.  20 C.F.R. § 404.1567(b).  The ALJ included the following restrictions: "The claimant must avoid exposure to dangerous moving machinery and unprotected heights; she also must avoid a concentrated exposure to chemicals, humidity, temperature extremes, dust, fumes or gasses.  She is restricted to work involving no detailed or complex tasks, i.e., requiring unskilled work and work requiring no more than occasional interaction with the public."  (R. 13).

II.

In order to be entitled to Supplemental Security Income payments a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw

inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) Did the Administrative Law Judge ("ALJ") Fail and Refuse to Properly Consider All Plaintiff's Impairments;

(2) Did the ALJ Fail to Properly Consider the Opinions of Claimant's Treating Veterans Administration Physicians, Confirmed by an Independent Consultative Exam; and

(3) Did the Appeals Council Properly Consider New Evidence Submitted to It.

On her first claim, Plaintiff urges error in the ALJ's failure to consider the "combined effect" of her impairments. Specifically, Plaintiff argues that the ALJ failed to

include Plaintiff's lumbar impairment and ignored the severity of her mental impairment and her asthma.  She contends that the ALJ mischaracterized her mental impairment as "mild" when her GAF scores placed her in the "serious" impairment category.  As for her asthma, Plaintiff testified that she requires the use of a breathing machine four times a day and as the VE testified, such would preclude her from all employment.  (Doc. 16 at 13-15).

In response, the Commissioner urges that the ALJ's decision clearly demonstrates that the ALJ properly considered the combined effect of Plaintiff's impairments.[3]  Regarding Plaintiff's asthma and mental impairments, the ALJ discussed both, but found the alleged limiting effects to not be credible.  Of note, Plaintiff does not challenge the credibility finding. As for Plaintiff's lumbar impairment, Plaintiff fails to identify medical evidence of same, and regardless, any alleged error in failing to discuss the lumbar impairment is harmless where the ALJ found in Plaintiff's favor at step two.  (Doc. 18 at 4-7).

Initially, to the extent that Plaintiff suggests that the ALJ erred at step two, I cannot agree.  Here, the ALJ credited Plaintiff with a number of severe impairments at this step, including substance abuse in alleged remission; personality disorder not otherwise specified; mood disorder; post traumatic stress disorder; asthma; cervical osteophytes; history of right wrist fracture; and cardiac arrhythmia.  The ALJ then proceeded through the balance of the five-step evaluation process called for by the regulations.  The Eleventh Circuit has held that, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that

---

[3]The Commissioner cites *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2003).

8

together qualify as severe, is enough to satisfy the requirement at step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Since Plaintiff here makes no claim to a listing level impairment, if the ALJ erred at all, it must be demonstrated at step four or step five of the evaluation process.

Plaintiff is correct that the Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments. 42 U.S.C. § 423(d)(2)(B); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). In *Bowen v. Heckler*, 748 F.2d 629 (11th Cir. 1984), the court held that where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling. In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled. *Id.* at 635; *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

Here, after careful review of the decision in light of my review of the medical record, I conclude Plaintiff is not entitled to relief on this claim. Initially, the decision reflects the ALJ's understanding of the five-step evaluation process dictated by the regulations as well as her obligation to consider all the claimant's impairments whether severe or not, individually and in combination. (R. 11). Further, her findings reflect that she did so. Thus, the ALJ specifically stated, "[t]he claimant does not have an impairment or a combination of impairments that meets or medically equals the severity criteria of any of the listings . . ." (R. 12). And as the Commissioner urges, in this circuit, such findings are sufficient to

demonstrates that the ALJ considered the combination of Plaintiff's impairments. *See Wilson v. Barnhart,* 284 F.3d 1219, 1224 (11th Cir.2002); *Jones v. Dept. of Health and Human Services,* 941 F.2d 1529, 1533 (11th Cir.1991) (citing *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir.1986)).

Beyond that, the decision clearly reflects the ALJ's consideration of asthma and her mental impairments, and also of her purported lumbar impairment to the extent such was revealed by the record before her. Each is discussed in turn beginning with the purported lumbar pain. As for her lumbar condition, Plaintiff is correct that there was no finding by the ALJ that she suffered a severe lumbar impairment, however by my review, such finding was not necessarily warranted on the record before the ALJ, and Plaintiff makes no contrary showing on this appeal. Initially, it is worth noting that Plaintiff did not testify that she was disabled because of back pain and she offered practically no testimony about the same. Indeed, about all Plaintiff said about back pain was that she fell off a bicycle and hurt her neck and that affects her back also. (R. 699). No additional testimony was given or elicited about this. In addressing the matter, the ALJ noted Plaintiff's testimony of neck and back problems from a bicycle accident for which she received treatment once a month. Referring to medical records in 2005, the ALJ noted no support for a neck fracture or significant symptoms. The ALJ also cited the consultative report from Dr. Jesse Palmer, M.D., in January 2006, which revealed an entirely normal examination, including the neck and hands as well as range of motion of the spine and major joints. The ALJ also noted that Plaintiff fell from her bicycle in January 2006 and complained of pain and swelling in her hand. Another bicycle accident was

10

reported in February 2008 but without evidence of fracture or contusion.  Finally, the ALJ also acknowledged findings of degenerative changes in the cervical spine in jail records from 2005, but no persistent symptoms or orthopedic referral for the same.

Plaintiff cites to some notes in her VA records wherein she complained of continuing back pain, but otherwise she makes no showing that such condition was severe or affected her functional capacity in a significant way or that the ALJ overlooked functional limitations at step four or step five of the evaluation process because of this condition.  My own review of the medical record reveals the following.  First, while there are multiple references to subjective complaints of back pain throughout Plaintiff's medical records– not differentiated between lumbar or otherwise for the most part– I can find no objective evidence before the ALJ supporting the same.  In a December 13, 2006, Progress Note from Bay Pines VA, Plaintiff presented with a chief complaint of "anger management."  She had recently been released from jail and she did not receive her medication during her incarceration.  She wanted to renew her medications for pick up that day.  She gave subjective complaints of wrist and back pain at a level of 8 on a scale of 1 to 10, with 10 being the greatest amount of pain.  However, upon physical exam, she appeared alert and in no acute distress, but had a faint smell of alcohol.  (R. 659-61).  On December 29, 2006, she presented with a complaint of intermittent lower back pain at a pain level of 6.  (R. 650).  However, the VA progress notes identify that she spends her leisure time biking, fishing, and cooking.  (R. 652).  There is no complaint of back pain in Plaintiff's visit on January 18, 2007, but on January 25, 2007, she presented in follow up to an emergency room visit for asthma, and had complaints of

11

persistent aching, dull back pain, at a pain level of 8, present for six months or more.  (R. 636-40).  Upon physical exam, she appeared alert and in no acute distress.  (R. 634-35).  Plaintiff was next seen in March 2007 in the Pinellas County Jail incarcerated homeless veterans program.  There was no complaint of back pain at that time.  (R. 624-28).  Plaintiff was seen June 29, 2007, with complaints of pain for right shoulder and wrist– no mention of back pain.  (R. 622).  On November 1, 2007, she had complaints of right side lower abdomen and back pain, of 6 or more months duration, described as aching, cramping, dull.  (R. 609).  There are subjective complaints of back pain on December 11, 2007, when she presented requesting pain medication.  There were no objective findings upon medical examination, and the notes document "a review of her chart shows some degenerative changes in the pt's cervical spine but I don't see any further evidence to support pain medication."  (R. 603-605).  On December 31, 2007, she had complaints of lower back and right knee pain after falling off her bicycle while drunk.  (R. 594).  In follow up to her bike accident on February 29, 2008, she was seen for complaints of pain in the knee, but no reference to back pain.  (R. 586).  On April 24, 2008, she was seen by the VA hospital with back and lung pain.  (R. 576).  Upon physical exam, she denied any arthralgia, myalgias, weakness, or joint swelling of the musculoskeletal system.  (R. 579).  Plaintiff had back and neck complaints on May 5, 2008, of an onset of less than 6 months, but again there were no objective findings to substantiate the pain complaints.  (R. 560).  There are no complaints of back pain in her visits of May 29, 2008; July 24, 2008;

September 9, 2008; or October 8, 2008.  (R. 487, 502, 530, 551).[4]  In sum, beyond Plaintiff's subjective complaints, there is little support for a lumbar impairment, severe or otherwise.

Significantly, there are no medical records or reports indicating any limitations associated with the low back problem, and as noted, Plaintiff made no effort to claim limitations associated with her back pain at the hearing.  In sum, I find no error in the ALJ's failure to include a severe lumbar impairment at any stage of the evaluation process.

As for Plaintiff's contention that the ALJ ignored the severity of her asthma, a review of the decision does not bear that out.  Plaintiff testified she could no longer perform the housekeeping job, in part, because of her asthma and inability to be around the dust.  (R. 708).  The ALJ took this impairment into consideration in her RFC findings such that she determined Plaintiff "must avoid a concentrated exposure to chemicals, humidity, temperature extremes, dust, fumes or gasses."  (R. 13).  As for Plaintiff's claim that she needs breathing treatments four times a day for twenty minutes at a time, the ALJ found this not entirely credible given the fact Plaintiff responded well to treatment with inhalants and in light of her activities which included household chores, going to the grocery store and VA clinic, doing landscaping, riding a bike, traveling, and playing football.[5]  In the end, I am obliged to

---

[4]As discussed below, subsequent to the hearing decision in an attachment to counsel's letter to the Appeals Council was a radiology report of lumbar and cervical MRIs which appear to have been taken in June 2009, however, the lumbar report appears incomplete.  (R. 680).  The impression from the lumbar MRI was for a central protrusion at L5-S1 level and multilevel bulging associated with disc degeneration and disc space narrowing.  The cervical MRI also revealed degenerative changes.

[5]Where an ALJ decides not to credit a claimant's testimony about severity of symptoms, the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding.  *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir.

conclude that while it is clear that Plaintiff suffers from asthma, she fails to demonstrate that the ALJ's assessment of the degree of functional impairment from the same is unsupported by substantial evidence.

Plaintiff also urges error in the ALJ's mischaracterization of her mental impairment as "mild" in light of her GAF scores. This is also addressed on her second claim in which Plaintiff argues that there are no contrary opinions from any examining doctor as to Plaintiff's mental impairments. Citing to her reported Global Assessment of Functioning ("GAF") scores, she argues that all but one of her treating psychiatrists/psychologists rated her mental GAF score at levels considered disabling, with one exam rating her 52, just 2 points above the disabling level. Her primary care has been through the Veteran's Administration, and as such, she urges the VA doctors' opinions are to be afforded great weight. Plaintiff notes that even the independent psychologist rated Plaintiff's GAF at 50. Thus, based on her mental impairment alone, Plaintiff urges reversal for an award of benefits. (Doc. 16 at 15-17).

The Commissioner responds that the ALJ properly considered Plaintiff's GAF scores and found them inconsistent with the other evidence of record. Moreover, her GAF scores

---

1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding. *Foote*, 67 F.3d at 1562. Here, the ALJ has articulated specific reasons for discrediting Plaintiff's complaints of the severity of her asthma, including her daily activities as well as her response to treatment. Moreover, as the Commissioner notes, Plaintiff has not challenged the credibility finding.

were often provided by individuals who are not "treating sources," but rather by a nurse and a social science specialist, neither of whom are considered "acceptable medical sources" to provide medical opinions.  Notwithstanding, the Commissioner declines to endorse GAF scores for use in the disability program as such scores lack a direct correlation to the severity requirements in the mental disorders listings.  A GAF score has little or no bearing on a Plaintiff's work-related functioning, and Plaintiff has failed to demonstrate otherwise.  (Doc. 18 at 7-9).

Initially, Plaintiff is wrong insofar as she suggests that the ALJ characterized her mental condition as mild.  In her review of the medical record, the ALJ fairly noted that jail records characterized Plaintiff's history of depression and anxiety as mild.  (R. 15).  However, by her own assessment, the ALJ rated Plaintiff as suffering moderate limitations in social functioning as well as activities requiring concentration, persistence or pace by reason of her mental condition and mild limitations in activities of daily living.  (R. 12-13).  Upon my review, this assessment is supported by substantial evidence and apart from citing to GAF scores, Plaintiff make no other demonstration to the contrary.

GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning."  AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV).  A GAF of 61-70 indicates that either some mild depressive symptoms are present or that difficulty in social or occupational functioning exists, a GAF of 51 to 60 means moderate symptoms (e.g., flat affect and circumstantial

speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers), and a GAF of 41-50 indicates either serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* A GAF of 31 to 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *Id.*

A low GAF score, however, does not require a finding of disability. *Seymore v. Apfel*, 131 F.3d 152, at *2 (10th Cir. 1997) (unpublished table decision) ("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work"); *accord Cox v. Apfel*, No. 99-2296-JWL, 2000 WL 1472729, at *9 (D. Kan. Feb. 24, 2000). Nor does a low GAF score translate into a specific finding in regard to functional limitations. *See Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (May 8, 2008).

A review of the VA medical records reflects GAF scores of 52 (R. 602), and 40 (R. 654). One was provided by a social worker, the other by a nurse. In her consultative psychological evaluation, Dr. Linda Appenfeldt, Ph.D., diagnosed mood disorder, not otherwise specified (because the psychologist could not determine if Plaintiff's mood disturbance was primary or substance induced). She also diagnosed Plaintiff for history of

16

victim of physical abuse, adult antisocial behavior, and a history of alcohol and drug abuse, with a GAF of 50.  (R. 223-26).  In her mental status exam of the Plaintiff, Dr. Appenfeldt notes Plaintiff appeared well-groomed, oriented, thoughtful, and of average intelligence. Plaintiff was alert, cooperative, and compliant, with coherent, relevant, and lucid conversation.  She evidenced no delusional material, formal thought disorder, or anxiety and there was nothing to suggest she was not in contact with reality.  *Id.*

The ALJ noted each of the GAF scores assessed, but found no psychiatric evidence of mental health care at the VA or elsewhere; no evidence of treatment for the hallucinations Plaintiff testified having; nor evidence that her alleged mental impairments prevented Plaintiff from doing basic self-care, attending to chores, watching television, seeking appropriate medical care, and pursuing her Supplemental Security income claim.  (R. 17).  Despite Plaintiff's urging to the contrary, under the applicable regulation and standard, the opinions of the registered nurse who assessed Plaintiff with a GAF of 40 and the social worker who assessed a GAF of 52 were not entitled to deference, only to fair consideration, which they here received.  *See* 20 C.F.R. § 416.913(d).  As the decision reflects, in assessing the Plaintiff's history of depression and anxiety, the ALJ concluded that the condition was not as severe as suggested by Plaintiff's GAF scores.  In drawing this conclusion, the ALJ considered Plaintiff's own complaints and testimony, as well as the entire medical record.  As suggested above, on these appeals, it is not for this court to examine these matters *de novo*, and upon my review, I am obliged to conclude that the ALJ's conclusion was reached in a manner consistent with the applicable standards and is supported by substantial evidence.  On

this appeal, Plaintiff makes no showing that the Plaintiff suffered functional limitations beyond those assessed by the ALJ.

On her final claim, Plaintiff submits that the Appeals Council failed to properly consider new evidence submitted to it.  Specifically, Plaintiff presented medical evidence she states supported the severity of her asthma attacks, as well as a cardiology consult detailing her family's history of heart disease and documenting her cardiac impairment.  Also submitted were cervical and lumbar MRI reports evidencing her disc degeneration.  (Doc. 16 at 17-18).

The Commissioner responds that the new evidence submitted to the Appeals Council ("AC") was obtained after the ALJ's decision and therefore does not pertain to the relevant period.  Regardless, none of the evidence submitted undermines the substantial evidence supporting the ALJ's findings.  (Doc. 18 at 9-14).

The AC "must consider new, material, and chronologically relevant evidence and must review the case if the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Ingram v. Comm'r of Soc. Sec. Admin*., 496 F.3d. 1253, 1261 (11th Cir. 2007).  When the AC refuses to consider new evidence submitted to it and denies review, that decision is subject to judicial review because it amounts to an error of law. *Barclay v. Comm'r of Soc. Sec. Admin*., 2008 WL 649184 (11th Cir. (Ala.) March 12, 2008) (unpublished) (citing *Keeton v. Dep't of Health and Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994)).  Otherwise, when reviewing the AC's denial of review, the court must "look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the AC must consider in making its decision whether to review an ALJ's decision." *Id*. at * 4

18

(citing *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998)). Thus, the court looks to the whole of the record in deciding whether the decision of the Appeals Council is supported by substantial evidence.

First, it is apparent that the AC did consider the evidence submitted with the letter of counsel dated July 13, 2009. (R. 2-3). Specifically the "new evidence" consisted of medical evidence from the Pinellas County Sheriff's Office dated November 11, 2005,[6] and the Bay Pines VA records dated July 24, 2008, to June 16, 2009. (R. 671-90). The VA records included an impression from a lumbar MRI revealing a central protrusion at L5-S1[7] (R. 680); and a report on a cervical MRI taken in June 2009 which revealed degenerative changes and a discophyte complex exerting mass effect on the thecal sac at C5-6. (R. 681). While I agree with Plaintiff that these objective reports add substance to Plaintiff's claim for neck and back pain and arguably relate to the period under consideration, they do nothing to undermine the decision of the Appeals Council to deny review. Plaintiff urges generally that this evidence further documents the severity of her conditions and their effect on her ability to work.

---

[6]These jail records were hardly new or material. In any event, the report revealed an asthma attack on November 28, 2005, which was treated with an Albuteral nebulizer. Such evidence while supportive of Plaintiff's claim she suffered asthma, in no way undermines the decision of the Appeals Council in denying review. Indeed, it reflects that Plaintiff's flare-up responded to an Albuteral inhaler. The practical issue presented by Plaintiff was not whether she suffered asthma and needed an inhaler during flare-ups, but rather whether her condition was so severe that it required her use of a breathing machine four times a day, twenty minutes at a time as she claimed. According to the VE, such limitation would prevent any work. In rejecting this degree of limitation, the ALJ noted that the medical record revealed that Plaintiff's asthma responded well to her inhalants and had not prevented her from maintaining an active lifestyle. Thus, this purported new evidence appears cumulative.

[7]It is unclear when the MRI was taken and that it is for Plaintiff, but I have accepted that it relates to Plaintiff.

However, while these records may help explain the pain complaints, they do not undermine the evidence supporting the decision of the Appeals Council, and Plaintiff wholly fails to show that they do.

The other new evidence revealed episodes of tachycardia in July 2008 and March 2009. (R. 673-75, 683-90). Diagnosis was for Wolff-Parkinson-White syndrome.[8] On July 2008, cardioversion x2 was necessary to stabilize her heart rate. On March 31, 2009, a radiofrequency ablation procedure was performed without complication, and Plaintiff was discharged home the following day. (R.686). By the ALJ's review, Plaintiff had recently suffered episodes of tachycardia that appeared to be from her continued drinking and had not required intensive treatment. (R. 16). In that light, these records were new and in addition to those before the ALJ. However, I agree with the Commissioner that such additional evidence does not undermine the conclusion of the Appeals Council that a rehearing was necessary. For all that is revealed, the ablation procedure was successful and without complication. On discharge, Plaintiff was limited to no strenuous exercise for one week after the ablation. No other functional limitations are apparent from the condition and no other restrictions were imposed.[9]

---

[8]Wolff-Parkinson-White syndrome is a heart condition in which there is an extra electrical pathway in the heart. The condition can lead to episodes of rapid heart rate or tachycardia. It may be treated by medications, electrical cardioversion (shock) and catheter ablation. www.nlm.nih.gov.medlineplus.

[9]While these records do confirm the family history of heart problems, they also reveal Plaintiff had dealt with this condition since age 8. They also suggest a relatively active lifestyle. Thus, at the time of the ablation procedure, she was riding her bike 30 minutes a day and planning on going to school.

In the end, the ALJ assessed Plaintiff capable of a limited range of light exertional work despite these and other impairments. By my consideration, that conclusion is not significantly affected by the additional evidence forwarded to the Appeals Council. Looking at the whole of the record, the decision of the Appeals Council is too supported by substantial evidence.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 28th day of September 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record